***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Morgan Chapman and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission modifies the Opinion and Award of the Deputy Commissioner as follows.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as
 STIPULATIONS
1. An employee-employer relationship existed between the plaintiff and the defendant-employer.
2. The parties are subject to, and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Insurance coverage is provided by the Hartford Insurance Company.
4. The plaintiff sustained a compensable injury on October 19, 1999.
5. A Form 60, Employer's Admission of Employee's Right to Compensation for carpal tunnel syndrome to the plaintiff's right hand was completed on December 7, 1999.
6. The plaintiff filed a Form 18, Notice and Claim on February 9, 2000.
7. A Form 62, Notice of Reinstatement of Compensation was completed on January 31, 2000.
8. A Form 28T, Notice of Termination of Compensation was completed on January 25, 2000.
The plaintiff filed a Motion for Medical Treatment on February 7, 2000.
10. The Plaintiff filed a Motion to be Allowed to Seek Physician of Choice dated February 15, 2000.
11. The plaintiff filed a Form 33, Request That Claim be Assigned for Hearing dated February 15, 2000.
12. Form 28T, Notice of Termination of Compensation was completed on February 22, 2000.
13. The defendants filed a Form 33R, Response to Request that Claim be Assigned for Hearing dated March 13, 2000.
14. The case was assigned for mediation and mediation was held on July 13, 2000. A Mediated Settlement Agreement was entered wherein the defendants would pay weekly temporary total benefits at the rate of $306.68 from April 28, 2000 to the present, and continuing and would pay medical bills of Dr. DeFranzo and other medical expenses related to this claim. The parties reserved the right to litigate the issue of whether Plaintiff is entitled to temporary total disability benefits from February 14, 2000 to April 27, 2000.
15. An Administrative Order was filed on July 16, 2001 disapproving the Defendants Form 24 Application to Terminate Compensation.
16. The plaintiff filed a Form 33, Request that Claim be Assigned for Hearing on August 15, 2001.
17. The defendants filed a Form 33R, Response to Request that claim be Assigned for Hearing dated September 21, 2001.
18. A mediated settlement conference was held on October 4, 2001.
19. The defendants have paid compensation to the plaintiff at the rate of $306.68 per week from April 28, 2000 to the present.
20. The parties stipulated into evidence a packet of medical records consisting of forty-three pages. The transcripts of the depositions of Dr. DeFranzo and Dr. Bartko were submitted and received into the evidentiary record. The Pre-Trial Agreement dated November 21, 2001, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the undersigned makes the following
 FINDINGS OF FACT
1. In October 1999 plaintiff was employed by defendant-employer as a knitting machine fixer, a position which she had apparently held since 1997. The plaintiff had worked as a knitter with other employers. She developed pain and numbness in her right hand and arm and went to Dr. Serene, an orthopedic surgeon, on October 21, 1999 for evaluation and treatment. The doctor ordered nerve tests, prescribed medication for her and placed her on light duty. The test findings were consistent with mild carpal tunnel syndrome. By November 3, 1999 her left hand was also affected and she was having difficulty sleeping and performing her light work duties. Consequently, Dr. Serene recommended surgery.
2. There was no evidence that plaintiff received any medical treatment for the next two months. On January 17, 2000 she saw Dr. Burrows at Carolina Hand Center on referral from defendants. She advised him of persistent tingling and numbness of her fingers and increasing weakness of her hands, which had kept her from being able to work since the previous November. Dr. Burrows diagnosed her with bilateral carpal tunnel syndrome and advised that her condition appeared to be work-related. He recommended a trial of conservative treatment and injected her right wrist. She apparently had some sort of reaction to the injection so it was not performed on the other hand. Despite treatment, she developed worsening symptoms, although her symptoms were not specific for carpal tunnel syndrome. Repeat nerve tests were within normal limits so Dr. Burrows did not recommend surgery but ordered physical therapy.
3. On February 29, 2000 plaintiff went to Dr. DeFranzo, a hand surgeon at Baptist Medical Center, for another opinion. She described her work duties and her persistent symptoms of pain, numbness, tingling and weakness of her hands. Dr. DeFranzo concluded that her history and physical examination were consistent with carpal tunnel syndrome but that she was also experiencing dystrophic-type pain. He recommended a twelve-week regimen of strict splinting and anti-inflammatory medication, and he agreed with Dr. Burrows that her condition was probably work-related. Plaintiff did not improve significantly after the twelve-week period of conservative treatment, so on her follow-up visit on May 25, 2000 Dr. DeFranzo recommended surgery.
4. Plaintiff underwent a right carpal tunnel release on June 12, 2000 and had dramatic improvement of her symptoms, so she asked for surgery on her left wrist. Dr. DeFranzo waited until July 31, 2000 to allow her right hand to heal and then operated on the left hand where he found worse compression of the nerve. After the second operation, plaintiff began to have gradually increasing pain in her right hand. Her left hand followed a similar pattern with significant improvement following surgery but then gradually increasing symptoms, which appeared to Dr. DeFranzo to be of a dystrophic nature. However, he subsequently became concerned that she might also have radiculopathy from a pinched nerve in her neck, so he recommended an MRI and physical therapy. Defendants had admitted liability for benefits under the Workers' Compensation Act for plaintiff's carpal tunnel syndrome by that time but they had not agreed to a neck injury. Consequently, they would not pay for the treatment. However, nerve tests were repeated which revealed no abnormalities, either from carpal tunnel syndrome or from cervical radiculopathy, so Dr. DeFranzo ultimately concluded that plaintiff did not have a radiculopathy.
5. Dr. DeFranzo diagnosed plaintiff with dystrophic pain initially from early reflex sympathetic dystrophy and recommended that she receive treatment from Pain Control Management at the Medical Center. The recommended treatment would attempt to block or otherwise break the cycle of the abnormal pain reflex. Defendants refused to authorize the treatment, however. After learning that the results of the bone scan were negative, Dr. DeFranzo then felt that plaintiff might be suffering from dystrophic pain, which is not as severe as reflex sympathetic distrophy. On April 18, 2001 they sent plaintiff to Dr. Bartko, a physiatrist in Greensboro, for an independent medical examination. Dr. Bartko disagreed with Dr. DeFranzo's assessment and concluded that plaintiff had no signs of reflex sympathetic dystrophy, although he could not explain or diagnose the cause of her persistent symptoms. Defendants then authorized him to provide treatment to plaintiff and he recommended a stellate ganglion block which plaintiff was ultimately unwilling to undergo. Consequently, he released her from medical care. Although he found that she had a chronic pain syndrome and gave her restrictions for sedentary work, he indicated that she had no permanent partial disability. His opinions appeared to be inconsistent and have not been given as much weight as those of Dr. DeFranzo, an associate professor of medicine at the medical school and plaintiff's treating physician.
6. By the greater weight of the credible evidence, plaintiff has developed chronic dystrophic pain syndrome, which is related to her compensable carpal tunnel syndrome. The treatment by Pain Control Management, although probably less effectual now in view of the delay, would nevertheless tend to effect a cure, give her relief and lessen her disability, and it should be provided by defendants.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. As a result of her compensable carpal tunnel syndrome, plaintiff has developed chronic dystrophic pain syndrome and is entitled to medical compensation for that problem. G.S. § 97-2(19); G.S. § 97-25;Click v. Pilot Freight Carriers, Inc., 300 N.C. 164 (1980).
2. Plaintiff is entitled to have defendants provide the treatment by Pain Control Management recommended by Dr. DeFranzo as well as ongoing treatment by Dr. DeFranzo, which treatment is hereby approved. G.S. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including those arising from the treatment by Dr. DeFranzo and the treatment by Pain Control Management which he has recommended and which treatment has now been approved.
2. An attorney's fee in the amount twenty-five percent of ongoing compensation is approved for plaintiff's counsel. Defendants shall pay him every fourth check.
3. Defendants shall pay the costs.
This the ___ day of January, 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER